IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE:  ALEX E. JONES § | |
| § | CASE NO. 22-33553 (CML) |
| § | |
| Debtor. § | Chapter 7 |

| | |
|---|---|
| **David Wheeler, Francine Wheeler** § | |
| **Wheeler, Jacqueline Barden,** § | Adversary Proc. No. 23-03037 |
| **Mark Barden, Nicole Hockley,** § | |
| **Ian Hockley, Jennifer Hensel,** § | |
| **Donna Soto, Carlee Soto-Parisi,** § | |
| **Carlos M. Soto, Jilian Soto** § | |
| **Marino, William Aldenberg,** § | |
| **William Sherlach, Robert** § | |
| **Parker And Richard M. Coan,** § | |
| **As Chapter 7 Trustee for the** § | |
| **Estate of Erica Lafferty** § | |
| **Plaintiffs,** § | |
| § | |
| **Alexander E. Jones and Free** § | |
| **Speech Systems, Llc** § | |
| **Defendants.** § | |

| | |
|---|---|
| **Alex E. Jones, as debtor and as owner** § | |
| **and sole Manager of Free Speed Systems,** § | |
| **LLC** § | |
| § | |
| **Plaintiffs** § | |
| vs. § | Adversary Pro. No.  24-03238 |
| § | |
| **Christopher Murray, as the Chapter 7** § | |
| **Trustee and Global Tetrahedron, LLC,** § | |
| **Mark Barden, Jacqueline Barden, Francine** § | |
| **Wheeler, David Wheeler, Ian Hockley,** § | |
| **Nicole Hockley, Jennifer Hensel, William** § | |
| **Aldenberg, William Sherlach, Carlos M. Soto,** § | |
| **Donna Soto, Jillian Soto-Marino, Carlee Soto** § | |
| **Parisi, Robert Parker, and Erica Ash** § | |
| § | |
| **Defendants** § | |

**PLAINTIFFS' TRO-RELATED REQUESTS, NOTIFICATION OF IMPORTANT INTERRELATED MATTERS AND REQUESTS FOR CLARIFICATION AND CONTINUANCE OF CERTAIN MATTERS**

TO THE HONORABLE CHRISTOPHER LOPEZ, UNITED STATES BANKRUPTCY JUDGE:

Alex Jones ("Jones") for himself and on behalf of Free Speech Systems, LLC ("FSS") (Jones and FSS are sometimes herein called the "Jones Parties") by this filing (a) seek clarification regarding pending matters, (b) notify the Court of pending events, and (c) request a continuance of certain matters as set forth herein. In this filing, the hearing presently scheduled for Monday November 25, 2024, is referred to as the "Monday Hearing." To summarize this filing, the Jones Parties:

a. **notify** the Court that undersigned counsel will be making an appearance in both the Adversary (23-03037) and the Bankruptcy (22-33553) as lead counsel for Alex Jones, along with co-counsel Shelby A. Jordan;

b. **notify** the Court that the undersigned on behalf of the Jones Parties intend to fully participate in the Monday Hearing regarding the Court's consideration of the recently conducted "auction";

c. **request confirmation** that their "Complaint and Emergency Application for Temporary Restraining Order and Preliminary Injunction Pursuant to Bankruptcy Rule 7065" (the "Sale TRO") filed on Monday, November 18 [Adv. 24-03238, Dkt. No. 1], which challenges the validity of the Trustees' Sale and requests a temporary restraining order and expedited discovery in connection with actions taken to effectuate the Trustee's sale, will also be heard at the Monday Hearing and if not, then to obtain a hearing time on the requested TRO emergency relief;

d. **advise** the Court that no later than two weeks from today (or December 4, 2024) Mr. Jones will be filing his Motion to Reconsider the Court's previous granting of partial summary judgment [Adv. 23-03037, Dkt. No. 76] on the dischargeability of the Connecticut Plaintiffs' Connecticut Judgment (the "Jones Reconsideration Motion") as the Court has been led into error on it's collateral estoppel rulings. The soon-to-be-filed Motion to Reconsider will present the omitted law and facts this Court was not advised of, including the clear requirements of the Connecticut Supreme Court that "[a] party must receive one opportunity for appellate review before it will be subject to the application of collateral estoppel." *State v. Charlotte Hungerford Hosp.*, 308 Conn. 140, 146, 60 A.3d 946, 950 (2013). Such appellate review has not occurred and for that reason alone, collateral estoppel does not apply.

>Equally significant is the fact that this Court was not presented with the host of United States Supreme Court cases regarding Constitutional mandates that effectively preempt any state court rulings to the contrary. For example, as against a media defendant such as Mr. Jones, the Connecticut Plaintiffs were Constitutionally required to demonstrate by "**clear and convincing evidence** that [Alex Jones] the defendant acted with actual malice—that is with knowledge that the published material was false or with reckless disregard of whether it was false." *Berisha v. Lawson*, 141 S. Ct. 2424, 2424 (2021) (emphasis added; internal citations; quotes omitted) (*citing New York Times Co. v. Sullivan*, 376 U. S. 254, 280, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964)). The Connecticut state court orders to the contrary cannot supersede the US Supreme Court mandates.
>
>These and other Supreme Court Constitutional mandates will to be presented in Jones's Reconsideration Motion and they will show that this Court was led into error in concluding collateral estoppel applied when it did not;
>
>e. **obtain clarification and continuance** in regards to the Connecticut Plaintiffs' own Motion for Reconsideration of this Court's Partial Summary Judgment [Adv. 23-03037, Dkt. No. 98], the Court's docket reflects that at the Monday Hearing the Court may make an oral ruling but does not say about what. If the oral ruling is going to address Plaintiffs' Motion to Reconsider, the Jones Parties request the Court delay or continue that ruling until it has had the opportunity to review the Jones Reconsideration Motion, as the Supreme Court authority will address important Constitutional limitations that are placed on the award of punitive damages, very relevant to the Plaintiffs' Motion to reconsider. Thus, the Jones Parties request a brief continuance so that both motions for reconsideration can be addressed at the same time;
>
>f. **advise** the Court of pending overlapping actions taken in the Western District of Texas, likely to result in the transfer to this Court of a recent case and issues pending in the Western District which will have an effect on other matters presently pending in this Court; and
>
>g. **request** a status conference to address all of the above.

The Jones Parties will address each of the above points.

**ARGUMENTS AND AUTHORTIES**

A.     DESIGNATION OF NEW LEAD COUNSEL

1.     At the request of Alex Jones, Messers. Shelby Jordan and Ben Broocks will be making appearances as new lead counsel for Alex Jones in both the Adversary (23-03037) and the Bankruptcy (22-33553). Both counsel are based in Austin, Texas.

### B.   NOTIFICATION OF PARTICIPATION BY THE JONES PARTIES IN THE MONDAY HEARING

2.   On Monday November 18, 2024, the Jones Parties filed their "Complaint and Verified Emergency Application for Temporary Restraining Order and Preliminary Injunction Pursuant to Bankruptcy Rule 7065" (the "Sale TRO"). The Sale TRO challenges, among other things, the Trustee's determination that Global Tetrahedron LLC ("Tetrahedron") and the sixteen Connecticut Plaintiffs (together, the "Joint Bidders") collectively were the "successful bidder." In the Sale TRO, the Jones Parties urge the Joint Bidders are disqualified from the Auction which was the subject of this Court's Order of September 25, 2024. [Adv. 24-03238, Dkt. No. 1] and First United American Companies ("First United") should have been the successful bidder.

3.   The Sale TRO also squarely addresses the interrelation of the bid of the Joint Bidders and the Connecticut Judgment currently on appeal, which judgment plays a crucial role in the deeply flawed "value analysis" the Trustee and Joint Bidders employed to arrive at the absurd conclusion that the Joint Bidder's bid of $1,750,000 bid is actually higher than the $3,500,000 bid of First United. In addition, the Jones Parties' attack the Trustee's illicit sale to the Joint Bidders of the Jones IP Rights and Jones Persona.[1]

4.   The Jones Parties intend to demonstrate that a bankruptcy trustee is a conservator of the estate and must, to the extent possible, be risk averse and decline the temptation of jeopardizing virtually assured benefits by supporting a bid that exposes the estate to a much greater risk of, among other things, a failed closing and the associated chance of being left with a devalued

---

[1] Alex Jones's intellectual property rights referenced herein consist of and are defined to mean (i) internet domain names containing in whole or in part, the name Jones, "Alex Jones," 'Alex E. Jones," (ii) Jones's image or likeness, (iii) Jones's unique voice (iv) other features of Jones which are unique, defining and associated with him (which are called the "Jones Persona"), and (v) the program and broadcasting content Jones has made or which he has produced over the years for all of his media programs and outlets (which are herein called along with the Jones Persona, the "Jones IP Rights"). The Jones IP Rights were purportedly included in the Trustee's sale notwithstanding this Court's instructions that any disputed assets would first be brought to the Court for a resolution of the dispute. This instruction and caution was wholly ignored as the Trustee simply listed for sale assets the Trustee marked "disputed."

asset. The Jones Parties will demonstrate that when a Trustee strays from these requirements as has happened here, it is proper for the Court to interfere with the trustee's judgment. *Id. (citing G-K Dev. Co. v. Broadmoor Place Invs., L.P. (In re Broadmoor Place Invs., L.P.)*, 994 F.2d 744, 745 (10th Cir. 1993) (approving the sale to an alternate bidder that was not recommended by the trustee)).

5. At the Monday Hearing, the Jones Parties thus intend to present their arguments on the Trustee's sale on these and other issues.

### C. THE JONES PARTIES' REQUEST TO BE HEARD ON THEIR EMERGENCY REQUESTS FOR TRO AND ACCELERATED DISCOVERY

6. The Sale TRO asks this Court (a) to schedule and conduct a hearing for issuance of temporary restraining orders; (b) order expedited discovery; and (c) to schedule and conduct a preliminary injunction hearing. The Sale TRO raises crucial misconduct that occurred at and around the time of the Trustee's Sale and is likely to reoccur unless enjoined. Among other things, in connection with that sale, in a coordinated effort with the Joint Bidders, the Trustee came to Austin and:

   a. took the Alex Jones Show and InfoWars programing off the air resulting in huge financial losses, which has now been partially restored but could happen again;

   b. fired employees, expressing a concern of employee theft (later tempered as to layoffs) which could happen again;

   c. mirrored copies of computer hard drives *and gave those to the Joint Bidders the day of they announced "winning bidder,"* who still have them and are believed to be using them, some of which may contain privileged attorney client communications (in fact a password-accessed hack into related computers has occurred believed to be the result of the Trustee's mirroring of the computers and furnishing IP passwords), the use of which needs to be restrained;

   d. permitted Tetrahedron to in some manner re-design or re-direct the InfoWars website to its own, with its continuous touting that Tetrahedron was the new owner of InfoWars which could happen again; and

e.  shut down the revenue stream of FSS's inventory of perishable consumer products sold, which has now been partially restored, but could happen again.

7. The actions the Trustee and Joint Bidders have taken and the damages the Jones Parties have sustained and will continue to sustain must not be repeated and thus must be (i) temporarily restrained, (ii) discovery allowed to determine what was taken and its current state and location, and (iii) enjoined through preliminary injunction. Expedited discovery is required so the Court and parties can be fully informed. The Jones Parties request confirmation that these matters will be addressed at the Monday Hearing and if not then, that the Court will set a time for their consideration.

**D.   JONES' MOTIONS FOR RECONSIDERATION OF THIS COURT'S ORDER OF PARTIAL SUMMARY JUDGMENT ARE SOON TO BE FILED**

8. The Connecticut Plaintiffs filed a Motion for Summary Judgment generally on the non-dischargability of the Connecticut Judgment's award of compensatory and punitive damages. [Adv. 23-03037, Dkt. No. 57]. This Court granted partial Summary Judgment, again generally holding that the unprecedented compensatory damage award given by the Connecticut trial court of $1,000,000,000 was essentially immune from review because of collateral estoppel. As to the award of approximately $500,000,000 in punitive damages, the Court denied the Connecticut Plaintiffs requested MSJ that that portion was non-dischargeable and the Connecticut Plaintiffs have requested this Court reconsider the denial of that decision [Adv. 23-03037, Dkt No. 98].

9. New lead counsel intends to shortly file Jones' motion to reconsider the Court's granting of partial summary judgment on the dischargeability of the compensatory award to the Connecticut Plaintiffs which will generally present three overlooked bodies of law that demonstrate this Court was led to err in so ruling.

*Unpresented Connecticut Authority Requiring an Appeal Before Collateral Estoppel Applies*

10. First, the new lead counsel's anticipated motion to reconsider will present that under Connecticut law -- assuming that states' collateral estoppel law applies – the Connecticut Judgment cannot collaterally estop this Court as the Connecticut Judgment has not been subject to appellate review. The Connecticut Supreme Court has held that "[a] party must receive one opportunity for appellate review before it will be subject to the application of collateral estoppel." *State v. Charlotte Hungerford Hosp.*, 308 Conn. 140, 146, 60 A.3d 946, 950 (2013). The Connecticut Plaintiffs surely know this requirement of Connecticut law and also know appellate review has not occurred. Yet this Court was not advised of this and thus led into error in ruling that the Connecticut Judgment had collateral estoppel effect.

*Pre-empting US Supreme Court Constitutional Authority Precludes Collateral Estoppel*

11. Second, there are a host of United States Supreme Court mandates that apply when: (a) a media defendant, which Mr. Jones clearly is, is sued as he was in Connecticut; (b) the suit covers matters of public concern, which the Sandy Hook tragedy and ensuing national pushes for gun control legislation clearly are; and (c) the Connecticut Plaintiffs have voluntarily thrust themselves into those public controversies and thus become public figures, which the Connecticut Plaintiffs surely did as almost immediately after the tragedy they began using the tragedy as a platform from which they publicly urged gun control legislation and endorsed and campaigned for gun control political candidates at every level of state and federal government. In fact, Connecticut Plaintiff Erica Lafferty (now Erica Ash) gave an approximately five (5) minute speech at the 2016 Democratic National Convention introducing her friend Hillary Clinton whom she supported because of Secretary Clinton's positions on gun control.

12. Among the many ignored Constitutional mandates is that the Connecticut Plaintiffs were Constitutionally required to demonstrate by "***clear and convincing evidence*** that [Mr. Jones]

acted with actual malice—that is, with knowledge that the published material was false or with reckless disregard of whether it was false." *Berisha v. Lawson*, 141 S. Ct. 2424, 2424 (2021) (emphasis added; internal citations; quotes omitted) (*citing New York Times Co. v. Sullivan*, 376 U. S. 254, 280, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964)).  This Constitutional requirement effectively preempts any state law to the contrary and yet was tossed into the waste bin by the Connecticut state court's default judgment ruling.  Neither have they been presented to or considered by this Court.  All of these will be addressed in the soon-to-be-filed Jones Motion to Reconsider.

<u>*Other Constitutional Federal Requirements Were Not Addressed*</u>

13. Jones's soon-to-be-filed Motion to Reconsider will also address binding federal authority not presented to this Court on other issues such as the established principal that this Court is fully empowered to review state court cases "…where state procedural law was inadequate to allow full litigation of a constitutional claim, and where state procedural law, though adequate in theory, was inadequate in practice." *Allen v. McCurry*, 449 U.S. 90, 100-03, 101 S. Ct. 411, 418-19 (1980).  The Jones Parties anticipate their Motion to Reconsider will be filed by December 4, 2024.

    **E.** **CONSIDERATION OF THE CONNECTICUT PLAINTIFFS' MOTION TO RECONSIDER SHOULD BE CONTINUED SO THAT IT CAN BE CONSIDERED TOGETHER WITH THE MOTION TO RECONSIDER TO BE FILED BY THE JONES PARTIES**

14. The Connecticut Plaintiffs have filed their own Motion for Reconsideration of this Court's partial summary judgment regarding punitive damages [Adv. 23-03037, Dkt. No. 98]. Their motion essentially asks the Court to reconsider its denial of dischargeability on the $500,000,000 punitive damage award.

15. Presently the Court's docket reflects that at the Monday Hearing an "Oral Ruling" in Adversary No. 23-03037 is set to be announced.  It is unclear whether this docket notation means the Court will announce its ruling on the Connecticut Plaintiffs' motion for reconsideration.  If so,

the Jones Parties request that any oral ruling on that be delayed until Jones's Motion to Reconsider is filed as Jones's Motion to Reconsider will raise issues germane to the award of punitive damages and thus relate to the Connecticut Plaintiffs' motion to reconsider. For example, Jones's Motion to Reconsider will demonstrate that the Supreme Court has clearly held that "deeply rooted in the common-law rule, predating the First Amendment, [is the requirement for] a ***showing of malice*** on the part of the defendant [by] plaintiffs to recover punitive or enhanced damages." *Herbert v. Lando*, 441 U.S. 153, 161-62, 99 S. Ct. 1635, 1641 (1979). A showing of malice must, in turn, be made by "clear and convincing" evidence: "The Court has also determined that for … public figures, a showing of *New York Times* malice is subject to a clear and convincing standard of proof." *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 15, 110 S. Ct. 2695, 2703-04 (1990). Nothing close to this has been done and these and other points to be made in the Jones Motion to Reconsider doom any award of punitive damages and certainly doom the Connecticut Plaintiffs' efforts to avoid their discharge. It would aid in judicial economy and efficiency for the Court to continue its determination of the Connecticut Plaintiffs' Motion to Reconsider until receipt of the briefing of the soon-to-be-filed Jones Motion to Reconsider.

  **F.**  **OVERLAPPING MATTERS OCCURRING IN THE WESTERN DISTRICT OF TEXAS LIKELY SOON TO BE TRANSFERRED TO THIS COURT**

16. Recently the Connecticut Plaintiffs filed in Travis County District Court (Austin, Texas) papers to domesticate in Texas the Connecticut Judgment which is currently on appeal in Connecticut. They then filed state court actions for turnover and seeking a receiver, representing to the Texas State District Court that this Court had by "final order" found the actual damages award in the Connecticut Judgment were non-dischargeable. The Jones Parties removed these matters to the Western District of Texas and filed an Answer, Affirmative Defenses and Counterclaims. *Erica Lafferty, et al Plaintiffs (Judgment Creditors) vs Alexander E. Jones, et al*,

Civil Action No. 1:24-cv-1198 in the United States District Court Western District (Austin Division). In addition, the Jones Parties filed a Motion to Transfer the Venue of that case including the Counterclaims to this Court as this Court has the "first filed" case of related cases (i.e., the Dischargeability Adversary Proceeding[2]) making this Court the "Home" Court. The Connecticut Plaintiffs have filed a Motion to Remand their collection case to state court but may have tentatively agreed to the venue transfer. In either event, the Jones Parties are quite confident that Fifth Circuit authority mandates that the venue issue be considered by the Western District of Texas before the remand and the venue transfer motion must be granted, transferring to this Court the Connecticut Plaintiffs' collection efforts and the Counterclaims asserted against them for violating Alex Jones's Constitutional rights. *Concierge Auctions, L.L.C. v. ICB Props. of Mia., L.L.C.,* 2023 U.S. App. LEXIS 20513, at *3-4 (5th Cir. 2023).

### G. STATUS CONFERENCE REQUESTED

17. Given the overlapping nature of the above matters, a status conference would be in order to coordinate and is requested.

Dated: November 20, 2024

         */s/ Shelby A. Jordan*
SHELBY A. JORDAN
State Bar No. 11016700
S.D. No. 2195
ANTONIO ORTIZ
State Bar No. 24074839
S.D. No. 1127322
**Jordan & Ortiz, P.C.**
500 North Shoreline Blvd., Suite 804
Corpus Christi, TX  78401
Telephone: (361) 884-5678
Facsimile:  (361) 888-5555
Email:  sjordan@jhwclaw.com
       aortiz@jhwclaw.com

---

[2] Equally clear is that the Connecticut Plaintiffs initiated this dischargeability adversary regarding their unconstitutional Connecticut Judgment before they filed and began wrongfully acting on their state court collection efforts removed to federal court, that the case will be transferred to this Court. *Id*.

                Copy to: cmadden@jhwclaw.com
                **CO-COUNSEL FOR ALEX JONES**

*/s/ Ben Broocks*
Ben C Broocks
State Bar No. 03058800
Federal Bar No. 94507
William A. Broocks
St. Bar No. 24107577
Federal Bar No. 3759653
BROOCKS LAW FIRM PLLC
248 Addie Roy Road, Suite B301
Austin, Texas 78746
Phone: (512) 201-2000
Fax: (512) 201-2032
Email: bbroocks@broockslawfirm.com
**CO-COUNSEL FOR ALEX JONES**

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was served upon all parties registered to receive notices via the Court's ECF noticing system on November 20, 2024 as well as the following parties.

Paula Brillson
General Counsel
Global Tetrahedron, LLC
Email: pbrillson@theonion.com
**General Counsel for Global Tetrahedron, LLC**

John R. Ashmead
Seward & Kissel LLP
One Battery Park Plaza
New York, NY 10004
Email: ashmead@sewkis.com
       matott@sewkis.com

Robert J. Gayda
Seward & Kissel LLP
One Battery Park Plaza
New York, NY 10004
Email: gayda@sewkis.com
**Counsel for Global Tetrahedron, LLC**

*/s/ Shelby A. Jordan*
Shelby A. Jordan