IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| ALEXANDER E. JONES, | ) | Case No. 22-33553 (CML) |
| | ) | |
| Debtor. | ) | |

| | | |
|---|---|---|
| Alex E. Jones, as debtor and as owner and sole Manager of Free Speed Systems, LLC | ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Adversary Pro. No. 24-03238 |
| Christopher Murray, as the Chapter 7 Trustee and Global Tetrahedron, LLC, Mark Barden, Jacqueline Barden, Francine Wheeler, David Wheeler, Ian Hockley, Nicole Hockley, Jennifer Hensel, William Aldenberg, William Sherlach, Carlos M. Soto, Donna Soto, Jillian Soto-Marino, Carlee Soto Parisi, Robert Parker, and Erica Ash | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**GLOBAL TETRAHEDRON, LLC'S (I) STATEMENT IN
SUPPORT OF TRUSTEE'S EXPEDITED MOTION FOR ENTRY OF
AN ORDER IN FURTHERANCE OF THE SALE OF ASSETS OF FREE
SPEECH SYSTEMS, LLC AND (II) OMNIBUS REPLY RELATED THERETO**

Global Tetrahedron, LLC ("Global Tetrahedron"), as joint Successful Bidder[1] and party-in-interest in the above-captioned case (the "Chapter 7 Case"), files this (i) statement in support of

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the *Order Granting Trustee's Motion for Entry for an Order Authorizing the Winddown of Free Speech Systems, LLC* [Docket 859] (the "Winddown Order").

the *Trustee's Expedited Motion for Entry of an Order in Furtherance of the Sale of Assets of Free Speech Systems, LLC* [Docket No. 915] (the "Sale Motion") and (ii) omnibus reply to various pleadings filed related thereto and to the sale of the IP Assets to Global Tetrahedron and the Connecticut Plaintiffs[2] (the "Sale") as the joint Successful Bidders (collectively, the "Joint Successful Bidders").  In support of the Sale Motion and the Sale, Global Tetrahedron also incorporates the *Trustee's Objection to the Debtor's Emergency Application for Temporary Restraining Order* filed contemporaneously herewith by the chapter 7 trustee appointed in the Chapter 7 Case (the "Trustee") by reference herein and respectfully states as follows:

1. The designation of Global Tetrahedron and the Connecticut Plaintiffs as the Joint Successful Bidders is the result of a fair and fulsome sale process that was conducted by the Trustee in good faith and in accordance with the terms of the Winddown Order.  While contesting parties may be disappointed with the result of the sale process, they are bound to respect that result.[3]  It is wholly inappropriate for any party to launch a largely irrelevant and unfounded collateral attack on the process and its result, designed solely to forestall approval of the Sale, create burdensome and unnecessary expense, confusion, and waste, and delay the estate's ability to recognize any benefit from the Sale process.[4]  The facts are simple—the Trustee, as fiduciary for the estate, in

---

[2] "Connecticut Plaintiffs" means Mark Barden, Jacqueline Barden, Francine Wheeler, David Wheeler, Ian Hockley, Nicole Hockley, Jennifer Hensel, William Aldenberg, William Sherlach, Carlos M. Soto, Donna Soto, Jillian Soto-Marino, Carlee Soto Parisi, Robert Parker, and Erica Ash.

[3] The Winddown Order expressly provides that "[b]y submitting its Sealed Bid, each Potential Bidder is agreeing to abide by and honor the terms of these Bid Requirements and this Order and agrees not to submit a bid or seek to reopen the Sale process or the IP Assets Auction (if held) after conclusion of the selection of the Successful Bidder (as defined herein)."  Winddown Order ¶ 6.

[4] Instead of objecting to the Sale Motion, First United American Companies, LLC ("FUAC") filed the *Emergency Motion to Disqualify Global Tetrahedron, LLC's Bid* [Docket No. 913] (the "Motion to Disqualify"), and the Debtor filed the *Plaintiff's Complaint and Emergency Application for Temporary Restraining Order and Preliminary Injunction Pursuant to Bankruptcy Rule 7065* [Docket No. 917] (the "TRO Complaint"), each of which is filled with bald and unsupported accusations, entirely irrelevant facts, and requests for inappropriate relief.

consultation with its independent third-party advisor, exercised reasonable business judgment in designing a bidding process to maximize value for the benefit of the estate and in ultimately accepting the best overall bid. The prescribed route for any challenge to the Trustee's reasonable business judgment is an objection to the Sale Motion. That is exactly what should occur here—the Court should set a hearing on the Sale Motion ("Sale Hearing") for the earliest possible date and approve the Sale Motion.

2. At such Sale Hearing, the evidence will show that: the Joint Successful Bidders made their bid in good faith, in compliance with the procedures for the sale of the IP Assets (the "Bidding Procedures") and absent collusion; that the process was fair and applied equally to all participating parties; that the Joint Successful Bidders submitted the best bid; and that the Trustee, as fiduciary, undertook extensive and rigorous analysis to select such bid as the Successful Bid. The Joint Successful Bidders are entitled to move forward to the Sale Hearing—as is typical following any sale process—where all parties will have the right to be heard. But the contesting parties' tactics outside that ordinary process have prejudiced the Joint Successful Bidders, who—in spite of being harassed and threatened by the Debtor and members of his audience since their winning bid was announced—have continued to participate in the sale process at great expense and without any clarity on consummation of the Sale and ultimate finality of the process. The Joint Successful Bidders have already funded the full cash purchase price for the Sale and stand ready and willing to proceed to the Sale Hearing and consummate the Sale following Court approval, so the estate can recognize the material benefits of this process. None of the allegations as to the sale process and its result made by First United American Companies, LLC ("FUAC") or the Debtor in this Chapter 7 Case—last ditch efforts to derail the Sale process—carry water, and the Sale of the IP Assets to the Joint Successful Bidders should be approved.

3

### I. The Sale Process Complies With the Winddown Order

3. On September 25, 2024, following appropriate notice and a contested hearing, the Court entered the Winddown Order, establishing the Bidding Procedures. The Bidding Procedures were designed to generate the greatest level of interest and best value for the IP Assets while affording the Trustee flexibility, in the Trustee's reasonable business judgment, to modify the Bidding Procedures to promote the goals of the bidding process.[5]

4. In accordance with the Bidding Procedures, the Trustee—with the assistance of Tranzon360, an independent third-party whose retention was approved by the Court—engaged in a fulsome process to solicit and develop the highest or otherwise best offer for the IP Assets. Upon receipt and analysis of the Global Tetrahedron and the Connecticut Plaintiffs' joint bid (the "GT Bid") and the FUAC bid (the "FUAC Bid"), the Trustee determined, in the reasonable exercise of his business judgment, that requesting final and best offers from the two Qualified Bidders in lieu of a live bidding process was the best option available to maximize value to creditors of the estate. Such process was consistent with the Winddown Order and the Trustee's discretion thereunder.[6]

---

[5] *See* Winddown Order ¶ 29.

[6] *See* Winddown Order ¶¶ 12 ("The Trustee is authorized to implement such other procedures as may be announced by the Trustee and his advisors from time to time on the record at Auction; *provided* that such other procedures are (i) not inconsistent with this Order, the Bankruptcy Code, or any other order of the Court, (ii) disclosed orally or in writing to all Qualified Bidders, and (iii) determined by the Trustee to further the goal of attaining the highest or otherwise best offer for the applicable IP Assets and any other Assets upon which the Qualified Bidder submitted a Qualified Bid."), 29 ("The Trustee's right is fully reserved, in his reasonable business judgement and in a manner consistent with his duties and applicable law, to modify or waive any procedures or requirements with respect to all Potential Bidders . . . and in a manner that will best promote the goals of the bidding process . . . including without limitation . . . (d) canceling any Auction . . . ."); Sale Mot. ¶ 32 ("The Trustee determined in his reasonable business judgement, and in consultation with his professionals, that the "final and best" overbid strategy (i) was in the best interest of all bidding parties, (ii) would provide a more equitable method of evaluating the bids, (iii) would provide the best method of maximizing value to the creditors, and (iv) was consistent with the terms of the Sealed Bid Package and Winddown Order and his discretion under the Winddown Order, 'prior to conclusion of an Auction (if any) [to] impose such other terms and conditions upon bidders as the Trustee determines to be in the best interests of the Debtor's estate, FSS and their creditors in this bankruptcy case.'").

Following submission of final and best offers by the IP Assets Bid Deadline, the Trustee engaged in a thorough analysis to assess each bid's total benefit to the estate and determined that the final GT Bid was the highest and best bid, selected such bid as the Successful Bid, and filed the notice of successful bidder [Docket No. 903] on November 14, 2024.[7] Such sale process has now run its course, and the parties are entitled to have the Court hold the Sale Hearing to seek approval of the Sale as soon as possible.

### II. The Bids Were Solicited in Good Faith and In Compliance with the Bidding Procedures

5. Consistent with the Bidding Procedures, the Trustee, with the assistance of Tranzon360, ran a comprehensive and fair sale process to promote active bidding by interested parties and to reach the highest or otherwise best offer available for the IP Assets. In conducting the sale process, the Trustee exercised its reasonable business judgment about the best way to maximize the value of the assets for the benefit of the estate.[8] Importantly, the process used by the Trustee to conduct the sale was fair and applied equally to all parties—the GT Bid and the FUAC Bid were subject to the same Bid Procedures, such process and related deadlines were disclosed with ample notice to all of Global Tetrahedron, the Connecticut Plaintiffs, and FUAC, and all parties received similar notices throughout the sale process, including the Trustee's communication notifying them of the requirement to submit their best and final bid in lieu of the live auction.[9] FUAC participated in this sale process, including the submission of a best and final bid in lieu of a live auction, and did not raise any objections as to how the process was conducted until *after* the GT Bid was declared the Successful Bid, revealing FUAC's objection for what it

---

[7] Sale Mot. ¶ 44.

[8] *See, e.g., In re Food Barn Stores, Inc.*, 107 F.3d 558, 564–65 (8th Cir. 1997) (holding that, in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand").

[9] Sale Mot. ¶ 33.

is—a belated attempt to challenge the integrity of a Court-approved process conducted in good faith by a fiduciary of the estate.

6. The GT Bid complied in all respects with the Bid Requirements set forth by the Winddown Order.[10] The Winddown Order is clear: bids for the IP Assets may include "cash and non-cash components"[11] and it is indisputable that the Distributable Proceeds Waiver adds material value that benefits unsecured creditors of the estate, who will receive a material recovery to which the Connecticut Plaintiffs were otherwise entitled.[12] The Trustee's analysis shows that such unsecured creditors will be entitled to more sale proceeds under the GT Bid than under the FUAC Bid—or under any bid with a cash value of up to $7,000,000.[13]

7. The GT Bid also complies with the other Bid Requirements of the Winddown Order, including: (a) stating the Purchase Price as a specific amount in U.S. Dollars,[14] listing the Purchase Price for the IP Assets as "[n]ot less than $7,000,000, as set forth in more detail in the accompanying Final Bid Letter"; (b) clearly identifying the IP Assets as the assets the Joint Successful Bidders sought to acquire[15] and disclosing the identity of Global Tetrahedron and the Connecticut Plaintiffs as the bidders[16]; (c) not conditioning the bid on the obtaining or the

---

[10] FUAC has objected to the Joint Successful Bid because it includes the Connecticut Plaintiffs' waiver of their entitlement to certain cash proceeds of the Sale (the "Distributable Proceeds Waiver").

[11] Winddown Order ¶ 6 ("Each Sealed Bid must clearly set forth the purchase price to be paid, including cash and non-cash components, if any.").

[12] Non-cash benefits are regularly included in 363 sale bids and must be considered when determining bid value. *See In re Douglas J. Roger, M.D., Inc. APC*, 393 F.Supp.3d 940, 966 (D. Cal. 2019) (holding that a bankruptcy court may not ignore non-cash benefits afforded to the estate from bid when determining whether bid was the highest and best offer) (citing *In re Lahijani*, 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005)).

[13] Sale Mot. ¶¶ 40–43 (analyzing incremental proceeds available to unsecured creditors other than the Connecticut Plaintiffs under the Distributable Proceeds Waiver using various assumptions).

[14] *Id.* ("The Purchase Price should be a specific amount in U.S. Dollars (not a range).").

[15] *Id.* ("Each Sealed Bid must clearly state which of the Assets the Potential Bidder seeks to acquire.").

[16] *Id.* ("Each Bid must fully disclose the identity of each entity and each entity's shareholders, partners, investors, and ultimate controlling entities that will be bidding for or purchasing the applicable Assets or

sufficiency of financing, internal approval, or on the outcome or review of due diligence;[17] and (d) funding the requisite Good Faith Deposit.[18]

### III. The GT Bid is the Highest or Otherwise Best Bid for the IP Assets

8. Following review and consideration of the GT Bid and the FUAC Bid and their overall benefit to the estate, the Trustee designated the GT Bid as the Successful Bid for the IP Assets.[19] The Trustee's business judgment determination, which is entitled to considerable deference, is clearly justified in light of the terms of each bid. While the GT Bid may have had a lower cash component, it also included (a) the Distributable Proceeds Waiver and (b) the payment of a portion of future revenues derived from the IP Assets to the Connecticut Plaintiffs and the Texas Plaintiffs on a *pro rata* basis (the "Future Revenue Payments"). The GT Bid, therefore, maximizes value for the benefit of the estate's unsecured creditors because such unsecured creditors' share of the Sale proceeds *will be greater under the GT Bid than under the FUAC Bid*. As courts commonly recognize, "[w]hile the bid that brings in the most cash often wins, it is 'common knowledge' that the 'highest bid is not always the best bid.'"[20] This is particularly true here because the Winddown Order does not mandate the Trustee to select the highest offer but, instead, to determine and select the Qualified Bid that is "the highest *or otherwise best* offer" for

---

otherwise participating in connection with such Sealed Bid and the complete terms of any such participation, along with sufficient evidence that the Potential Bidder is legally empowered to complete the transactions on the terms contemplated by the parties.").

[17] *Id.* ("A Sealed Bid shall not be conditioned on the obtaining or the sufficiency of financing, any internal approval or on the outcome or review of due diligence.").

[18] *Id.* ("Each Sealed Bid must be accompanied by a cash deposit equal to ten percent (10%) of the Purchase Price of such Sealed Bid, submitted by wire transfer of immediately available funds to an interest-free separate segregated account of FSS to be identified and established by the Trustee.").

[19] *See Notice of Successful Bidder and Backstop Bidder in the Auction for the Assets of Free Speech Systems, LLC Free and Clear of Any and All Claims, Interests, and Encumbrances* [Docket No. 903] (the "Notice of Successful Bidder").

[20] *In re Tresha-Mob, LLC*, 2019 WL 1785431, at *2 (Bankr. W.D. Tex. Apr. 3, 2019) (citation omitted).

the IP Assets.[21] As courts have recognized, "a 'highest' bid is not always the 'highest and best bid'" and "the inclusion of 'best' in that conjunction is not mere surplusage."[22] For these reasons, the Trustee appropriately determined, in his reasonable business judgment, that the GT Bid is the highest and best offer for the IP Assets.

### IV. FUAC and the Debtor's Allegations As To The Impropriety of the Sale Process Are Factually Inaccurate

9. FUAC and the Debtor filed the Motion to Disqualify and the TRO Complaint, respectively, in an improper attempt to halt the sale process and challenge the GT Bid as the Successful Bid. Both the Motion to Disqualify and the TRO Complaint rely on allegations that are speculative and inaccurate, completely unsupported by fact, and largely irrelevant.

10. *First*, FUAC and the Debtor allege that Global Tetrahedron and the Connecticut Plaintiffs engaged in bid collusion by "teaming up" to submit a joint bid in an effort to "rig" the auction.[23] These allegations are an attempt to derail the Sale process by a losing bidder, and reflect a misunderstanding of the elements of collusion. Section 363(n) of the Bankruptcy Code permits only the trustee to avoid a sale when "the sale price was controlled by an agreement among potential bidders."[24] As an initial matter, no party in interest has standing to assert collusion other than the Trustee.[25] Additionally, allegations of collusion require a showing of price suppression,

---

[21] Winddown Order ¶ 13 ("The Trustee is authorized at the IP Assets Auction (if any) to (a) determine which Qualified Bid is the highest *or otherwise best* offer for the respective Assets based on their perceived competitiveness in comparison to other Bids") (emphasis added).

[22] *In re Bakalis*, 220 B.R. 525, 533 (Bankr. E.D.N.Y. 1998).

[23] Mot. to Disqualify ¶ 9; TRO Complaint ¶¶ 53–54.

[24] 11 U.S.C. § 363(n)

[25] 11 U.S.C. §363(n) (listing the trustee as the only party authorized to bring a challenge to a sale under 11 U.S.C. § 363(n)); *In re New Energy Corp.*, 739 F.3d 1077, 1079 (7th Cir. 2014) ("[U]nder § 363(n), the trustee rather than a bidder is the right party to protest collusive sales" and explaining that a potential bidder lacks standing to object to an allegedly collusive auction because of the plain language of the statute limiting relief to the trustee and because potential bidders would be helped, not harmed, by collusion that chills the bidding); *In re Butan Valley v. Alkasabi*, 2009 WL 5205343, at *2 (S.D. Tex. Dec. 23, 2009) ("The only

and the estate being worse off for that agreement amongst bidders. Here, far from suppressing the purchase price, the joint bid between Global Tetrahedron and the Connecticut Plaintiffs had the effect of *increasing* the consideration received by the estate, as the joint bid allowed the GT Bid to offer the Distributable Proceeds Waiver, which confers material additional value to unsecured creditors. The Trustee, as fiduciary of the estate, and his independent third-party advisor, both determined following careful consideration that the GT Bid provided the highest value.[26] There can be no collusion when the bid benefited the estate. The Bidding Procedures recognizes this potential value of joint bids by expressly contemplating them.[27] That is also why courts have recognized that the mere existence of a joint bid does not amount to collusion.[28]

---

two claims asserted in the Adversary Proceeding Complaint are based on § 363(n). That statute provides clearly that it is the 'trustee' who may avoid a sale 'if the sale price was controlled by an agreement among potential bidders at such sale.' Alkasabi is not the 'trustee' and, as a result, he lacks standing to file and pursue a claim under § 363(n).") (citing *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 120 S. Ct. 1942 (2000) (interpreting similar language in different Bankruptcy Code provision as conferring standing on the trustee only)).

[26] *See* Sale Mot. ¶¶ 40–44 ("Based on this analysis, the Trustee determined that the GT Final Bid was the highest and best bid received and selected that bid as the winning bidder.").

[27] Winddown Order ¶ 6 ("Each Bid must fully disclose the identity of each entity and each entity's shareholders, partners, investors, and ultimate controlling entities that will be bidding for or purchasing the applicable Assets or otherwise participating in connection with such Sealed Bid, and the complete terms of any such participation . . . .").

[28] *See In re Edwards*, 228 B.R. 552, 566 (Bankr. E.D. Pa. 1998) ("Thus, the Vogel decision appears to reject Debtor's notion that an agreement between joint bidders that results in a single bid in exchange for some consideration must necessarily evidence bad faith.") (citing *Landscape Properties, Inc. v. Vogel*, 46 F.2d 1416 (8th Cir. 1995)); *In re New Energy Corp.*, 739 F.3d 1077, 1079 (7th Cir. 2014) ("Not that agreement among bidders necessarily deserves opprobrium. Joint ventures have the potential to improve productivity as well as the potential to affect prices; that's why in antitrust law they are analyzed under the Rule of Reason rather than a rule of per se illegality. All Natural Chem offered to show is that two other bidders formed a joint venture; this is short of establishing forbidden collusion. Perhaps the agreement increased the price realized—which could have harmed Natural Chem (had it bid) but would have helped New Energy's creditors and would have been a reason to confirm the sale rather than set it aside."); *see also* 3 Collier on Bankruptcy P 363.12 ("The mere existence of a joint bid does not itself amount to collusive bidding, and it is not uncommon for potential bidders to work together to give themselves more bidding power.").

11. **Second**, FUAC and the Debtor's assertion that the sale process lacked transparency because the Trustee did not disclose that the GT Bid was comprised of the Distributable Proceeds Waiver contradicts the purpose, and is inconsistent with the terms, of the Bidding Procedures. Sealed bid sales are customarily used by trustees as a way to maximize value, and the competitive aspect of the process would be entirely undermined should bidders know the terms of their competitors' bids.[29] To the contrary, sealed bids maintain the competitive tension between bidders and force bidders to offer up their best terms irrespective of where other bids sit. This process—which was conducted by sealed envelope submissions—strictly complies with the terms of the Bidding Procedures.[30] And far from maintaining this process in secrecy, once the Trustee selected the Successful Bidder, the Trustee publicly disclosed all information about the Qualified Bids, including by disclosing copies of the initial and final bids submitted by each Qualified Bidder.[31]

V. **Requests for Disqualification of the Successful Bid and a Temporary Restraining Order Are Improper**

12. The Disqualification Motion and the TRO Complaint are inappropriate collateral attacks on the approval of the sale and should not be given any merit. As discussed at the November 14 hearing, the Trustee is seeking separate approval of the Sale. On November 18, the Trustee filed the Sale Motion, seeking approval of the GT Bid. All parties-in-interest have received adequate notice and will have an opportunity to be heard at the Sale Hearing. For these reasons, challenges to the Sale must be brought in opposition to the Sale Motion and addressed in that context as part of the Sale Hearing.

---

[29] Cf. *In re Moore*, 608 F.3d 253, 263 (5th Cir. 2010) ("A trustee has the duty to maximize value of the estate.").

[30] Winddown Order ¶ 6 (requiring that bidders submit "sealed bids" to participate in the bidding process for the IP Assets).

[31] *See* Sale Mot. ¶¶ 2, 26–28, 36–43; Ex. B-G.

13.     FUAC's attempt to disqualify the GT Bid because it does not believe the GT Bid is the highest or otherwise best offer for the IT Assets also runs contrary to the competitive nature of the process.  Unsuccessful bidders can of course challenge a trustee's business judgment in selecting another bid.  But seeking to disqualify a competing bid has no basis in the Sale Process; it is a transparent attempt to eliminate competition and substitute the objector's own business judgment for the Trustee's.  Similarly, the Debtor's request for a temporary restraining order is an irrelevant distraction—the Court will appropriately address at the Sale Hearing whether the sale to the Joint Successful Bidders may go forward.  Given the significant cost and delay already suffered by Global Tetrahedron, the Court should dispose of these attempts to create prejudicial cost and delay and schedule the Sale Hearing as soon as possible.  That hearing—where evidence, rather than unfounded speculation, will be required—will show that the bidding process was fair and open, complied with the Court's order, and resulted in selection of the bid that provides the greatest benefit to the estate.

Dated: November 24, 2024                     Respectfully submitted,

                                                                */s/ Gregg Costa*
**GIBSON, DUNN & CRUTCHER LLP**
Gregg Costa
State Bar No. 24028160
811 Main Street Suite 3000
Houston, TX 77002-6117
Telephone:     (346) 718-6600
Email: GCosta@gibsondunn.com

**GIBSON, DUNN & CRUTCHER LLP**
Jason Z. Goldstein (*pro hac vice* pending)
200 Park Avenue
New York, New York 100166
Telephone:     (212) 351-4000
Email: JGoldstein@gibsondunn.com

**Counsel to Global Tetrahedron, LLC**

**CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing Statement has been served on counsel for the Debtor, the Debtor, and all parties receiving or entitled to notice through CM/ECF on this 24th day of November, 2024.

                                                   */s/ Lauren Womack*
                                                   Lauren Womack