# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE:  ALEX E. JONES | § | CASE NO. 23-33553 (CML) |
| | § | |
| Debtor | § | Chapter 7 |

---

| | | |
|---|---|---|
| Alexander E. Jones, as debtor and as owner and sole Manager of Free Speech Systems, LLC | § § § | |
| | § | |
| **Plaintiffs** | § | |
| vs. | § | **Adversary Proceeding 24-03238** |
| | § | |
| Christopher Murray, as the Chapter 7 Trustee and Global Tetrahedron, LLC, Mark Barden, Jacqueline Barden, Francine Wheeler, David Wheeler, Ian Hockley, Nicole Hockley, Jennifer Hensel, William Aldenberg, William Sherlach, Carlos M. Soto, Donna Soto, Jillian Soto-Marino, Carlee Soto Parisi, Robert Parker and Erica Ash | § § § § § § § § § § § | |
| | § | |
| **Defendants** | § | |

---

## PLAINTIFFS' FIRST AMENDED COMPLAINT AND EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND PRELIMINARY AND PERMANENT INJUNCTION PURSUANT TO BANKRUPTCY RULE 7065

**Emergency relief has been requested. Relief is requested not later than Wednesday, February 5, 2025, at 9:00 a.m.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**The Debtor requests that this motion be considered prior to hearings currently scheduled in this case on Wednesday, February 5, 2025, at 9:00 a.m. in Courtroom 401, fourth floor, 515 Rusk, Houston, Texas 77002.**

**You may participate in the hearing either in person or by an audio and video connection Audio communication will be by use of the Court's dial-in facility. You**

> **may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number.**
>
> **Judge Lopez's conference room number is 590153. Video communication will be by use of the GoTo platform. Connect via the free GoTo application or click the link on Judge Lopez's home page. The meeting code is "JudgeLopez." Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's home page. Select the case name, complete the required fields and click "submit" to complete your appearance.**

TO THE HONORABLE CHRISTOPHER LOPEZ, UNITED STATES BANKRUPTCY JUDGE:

Alexander E. Jones, individually ("Alex Jones") as to his appellate rights set out herein, and as to the appellate interests and rights of Free Speech Systems, LLC, files this First Amended Complaint and Emergency Request for a Temporary Restraining Order. This Emergency Request for a Temporary Restraining Order is precipitated by a Motion filed at Dkt. 1011, Case No. 22-33553, titled "Trustee's Expedited Motion for Entry of An Order (I) Authorizing and Approving the Settlement by and Between the Chapter 7 Trustee, The Connecticut Families, and the Texas Families, and (II) Granting Related Relief" (herein called the "*Trustee's Motion*")[1], and Debtor states as follows:

## I.
## PARTIES

1.      Plaintiffs Alex Jones is an individual and as having owned 100% of the limited liability membership and the sole manager of **Free Speech Systems, LLC** ("FSS") and the equitable owner of the FSS appellate rights,  has standing to bring this Complaint seeking the relief herein requested particularly regarding the Jones and FSS appellate rights in the pending appeal in

---

[1] Capitalized undefined terms used herein shall have the meanings stated in the Trustee's Motion.

the Connecticut Supreme Court challenging the Connecticut Judgment and the pending appeal in the Austin Court of Appeals challenging the Texas Judgment, both judgments made the basis of proofs of claims filed in the Alex E. Jones Chapter 11 case, now pending as the Alex E. Jones Chapter 7 case.

2.      Defendants  Mark Barden, Jacqueline Barden, Francine Wheeler, David Wheeler, Ian Hockley, Nicole Hockley, Jennifer Hensel, William Aldenberg, William Sherlach, Carlos M. Soto, Donna Soto, Jillian Soto-Marino, Carlee Soto Parisi, Robert Parker, and Erica Ash, (sometimes herein called the "**Connecticut Plaintiffs")** are participants in the violations herein complained of including the collusive Settlement Agreement now the subject of the Trustee's Motion to settled.   By participating in the purported Settlement and the Motion seeking approval thereof on their behalf, and the filing of various papers and appearance in this bankruptcy they have appeared in this case and may be served with process by serving their legal counsel of record.

3.      Defendant **Chris Murray**, is the Trustee of the Chapter 7 Case who has violated the terms and provisions of the Sale Order (hereafter defined), violated the conditions of the Court's order of October 25, 2024 to not sell any of the Jones IP Rights (including the Jones Persona) or other assets title to which are subject to dispute without bringing matter of those assets to the Court for ownership determination prior to sale and participated in the collusive bidding that took place in the Auction.  He has appeared in this case and may be served with process by serving his attorney of record, Joshua Wolfshohl, Porter Hedges, LLP.

4.      Defendants Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, and The Estate of Marcel Fontaine (sometimes herein called the "**Texas Plaintiffs")** are participants in the violations herein complained of including the collusive Settlement Agreement now the subject of the Trustee's Motion to settled.  By participating in the purported Settlement and the Motion seeking approval thereof on their behalf, and the filing of various papers and

appearance in this bankruptcy they have appeared in this case and may be served with process by serving their legal counsel of record.

## II.
## JURISDICTION

5.      This Court has jurisdiction to consider this Complaint under 28 U.S.C. § 1334.  This is a core proceeding under 28 U.S.C. § 157(b), and to the extent necessary, the Jones Plaintiffs consent to the Court entering a final order consistent with Article III of the United States Constitution.

## III.
## BACKGROUND

6.      On January 21, 2025, Alexander E. Jones for himself and his wholly owned company, Free Speech Systems, LLC ("*FSS*") filed in the Connecticut Supreme Court a Petition for Certification ("PFC") [*Exhibit 1*] asking the Connecticut Supreme Court to grant the appeal in the underlying Connecticut case.

7.      Originally due January 13, 2025, after one extension was granted, January 21, 2025 was the final day an appeal request could be filed.  The PFC seeks approval for a discretionary appeal to reverse the monstrosity of injustice inflicted on Jones/FSS jointly and severally in Connecticut by an unjust judgment entered as a result of death penalty sanctions entered long after this bankruptcy was filed, which judgment and death penalty was upheld by a Connecticut court of appeals who had not been presented with any of the Constitutional or other arguments set forth in the attached PFC.[2]

---

[2] The Court of Appeals stated in a footnote that no US Constitutional issues had been raised by Jones/FSS's previous counsel.  It noted the only "constitutional" provision referenced was an irrelevant Connecticut criminal constitutional provision, and even as to that, the briefing was so inadequate the issue was deemed "abandoned," stating

      Second, in their principal appellate brief, the defendants claim that "[a] liability default is never appropriate in a case involving speech, given the importance the Connecticut constitution places on speech." The defendants cite article first, § 6, of the Connecticut constitution, which, as they concede, applies only to criminal

8.      Although this Court has repeatedly blessed Jones/FSS pursuing all available appeals, the Trustee, the Connecticut Plaintiffs and the Texas Plaintiffs (collectively, "Plaintiffs") are pulling out all the stops to prevent the appeals, particularly the Connecticut appeal, which will almost certainly result in the reversal of those wildly unjust judgments.  They hope to do so by asking this Court to judicially decree the Trustee alone has sole appellate power as to FSS, which it is now clear, he in turn is going to exercise for the benefit of the Plaintiffs.  This will forever saddle Alex Jones and FSS with record-breaking judgments that are nondischargeable.  After this, the Trustee will deem "allowed" those despicable judgments in full, at an amount even larger than the Connecticut Court affirmed.  That is the illicit plan and it must be enjoined by halting the Plaintiffs' interference with the with the appellate processes in Connecticut and Texas.

9.      Specifically, Paragraph 14 of the Proposed Settlement Order [Dkt. 1011-1] that the Trustee and Plaintiffs seek to have this Court enter—along with an identical Paragraph 22(e) of the Trustee's Motion, -- asks this Court to rule that the Trustee has exclusive authority to determine whether to pursue or abandon an appeal in both Connecticut and Texas.  Here is what they want this Court to say:

> "*Appellate Rights*. The rights of FSS to appeal any judgment(s) awarded in favor of the Families in the State Court Litigation solely as against FSS shall constitute property of the Estate, and the Trustee shall have the exclusive authority to prosecute or dismiss any such appeal on behalf of FSS. For the avoidance of doubt, all parties' rights are reserved with respect to Jones' appeal of the State Court Litigation as such appeals related to judgment(s) awarded to the Families against Jones, including whether such appellate rights constitute property of the Debtor's Chapter 7 Estate."

---

prosecutions; ….; and which provides: "In all prosecutions or indictments for libels, the truth may be given in evidence, and the jury shall have the right to determine the law and the facts, under the direction of the court." … The defendants' principal appellate brief is bereft of any substantive legal analysis to support this claim, and, therefore, we deem it to be abandoned.

*Lafferty v. Jones*, 229 Conn. App. 487, 510 n.26 (2024)

Note the grammar: it is not past tense but present tense; i.e. they want a present tense "grant" of these rights, not a past tense recognition of any preexisting rights, and without further Court involvement.

10.     While the verb tense of the request is present tense, the Trustee and Plaintiffs appear to be taking the position that Jones/FSS should not have filed the PFC in Connecticut on the deadline date of January 13, 2025 – without which appellate rights would have expired – and have no standing to prosecute the Connecticut appeal. This request has nothing to do with the terms of the ostensible settlement [Dkt. 1011]; rather this request is a non sequitur that ties in with no other provision in the Trustee's Motion. And yet it has been inserted into the Trustee's Motion and the Proposed Order.

11.     Its inclusion can only be explained as attempting to give the Connecticut Plaintiffs an "order" from this Court they can then file with the Connecticut Supreme Court in the context of advising or suggesting to that court that the PFC of Jones/FSS was filed and is being pursued without the Trustee's permission. Notably, the petition for certification process in Connecticut affords Jones/FSS no response to whatever the Connecticut Plaintiffs file.

12.     This in turn will precipitate either (i) an outright dismissal of the appeal by the Connecticut Supreme Court to which FSS has no right to reply or (ii) a delay in the appellate process while the Supreme Court sorts through the unnecessary and fictional jurisdictional quagmire, which may include asking this Court for clarification. All of which can be avoided by entry of this requested injunctive relief right now.

13.     The evidence that this is what the Connecticut Plaintiffs plan to do, is crystal clear. First, before the hearing on the Trustee's Motion [Dkt. 1011] was continued, Jones/FSS had noticed the Trustee's deposition, which Jones/FSS cancelled. Although they were notified of the cancellation and Jones/FSS were not even present, the Connecticut Plaintiffs proceeded with

the cancelled deposition of the Trustee, the Connecticut Plaintiffs' attorney eliciting testimony

from the Trustee that he did not authorize FSS's appeal:

> 11  Q.  Mr. Murray, are you aware that yesterday
> 12   Mr. Jones filed a cert petition in the Connecticut
> 13   appellate courts?
> 14  A.  Yes.
> 15  Q.  Did you authorize Mr. Jones to file the
> 16   petition on behalf of Free Speech Systems?
> 17  A.  No.
> 18  Q.  Are you aware of any authority that you have
> 19   granted to Mr. Jay Wolman, who is the attorney that
> 20   filed that petition?
> 21  A.  No.
> 22  Q.  Thank you.
> 23       MR. KIMPLER: No further questions.

14.     Apart from unethically proceeding with a deposition when Jones/FSS were not

present, alarmed by these questions when later brought to their attention, counsel for Jones/FSS

asked the Trustee and later the Plaintiffs (via voice mail and follow up email) to confirm that

nothing like this would be presented to the Connecticut Supreme Court, stating that request to

the Plaintiffs in one exchange as follows:

> "To proactively address this, I'm preparing a TRO to seek clarity from Judge Lopez
> generally on the validity of our filing and precluding its challenge. This TRO would be
> unnecessary, however, if we receive assurances from the Connecticut parties that they will
> not raise this issue in the Connecticut Supreme Court.  Without that assurance, we will
> pursue the TRO."

Refusing to confirm, the Connecticut Plaintiffs said in response:

> "…so that we can consider your request, on what basis does Mr. Wolman [co-counsel]
> claim to have authority to pursue an appeal for, or otherwise act on behalf of, FSS?  Please
> also explain why you are appearing on behalf of Jones, but not FSS?  Once we understand
> the basis for your position, we are happy to discuss further if that would be helpful.  Our
> position is that FSS is controlled by the Trustee (as evidenced by, for example, his ability
> to sell its assets).

15.     This temporary restraining order is vital, and it must be issued now. In so far as

the Connecticut and Texas appellate courts are concerned, it requests this Court preclude the

Trustee, the Connecticut Plaintiffs and the Texas Plaintiffs from (a) challenging the standing of Jones and FSS to prosecute their appeals in the respective appellate courts, and/or (b) suggesting to the respective appellate court's that the appeal of FSS and/or Jones is somehow being undertaken without the required permission of the Trustee.  In so far as the dealings between and among the Trustee and the Plaintiffs (or other third party) the requested TRO would preclude entering into any agreement which included as a condition the Trustee dropping either or both appeals as a part thereof (including the preclusion of a condition like this in any future sale to Global Tetrahedron, or any other third party, which the Trustee is believed to have been furiously laying the ground work for).

16.     This Motion is supported by the Declaration of Ben Broocks and the Court's own files which Jones/FSS asks this Court to take judicial notice of.[3]

17.     It is needed as an emergency motion because in Connecticut, review by the Supreme Court is by a discretionary Petition for Certification that has strict deadlines and parameters.  After one extension, the last day for filing was January 21, 2025, which deadline Jones/FSS made.  The Connecticut parties have a response due which by agreement with Jones/FSS is due on February 7, 2025.  Jones/FSS are not entitled to reply. All the Connecticut Plaintiffs need to do to kill the PFC is to suggest, even in a footnote, a lack of authority by Jones/FSS to have filed the PFC, in their Response.  And they have made it clear that is what they

---

[3] *Okorie v. Citizens Fin. Grp.*, No. 2:23-cv-100-TBM-RPM, 2023 U.S. Dist. LEXIS 173578, at *5-6 (S.D. Miss. 2023):  Additionally, this Court has taken judicial notice of the publicly filed motions and orders undergirding the Bankruptcy Court's factual findings. See Colonial Oaks Assisted Living Lafayette, L.L.C. v. Hannie Development, Inc., 972 F.3d 684, 688 n. 9 (5th Cir. 2020) (noting courts can take judicial notice of public filings). Each of these facts is easily verified by consulting the docket sheet for Okorie's non-adversarial bankruptcy case, see United States Bankruptcy Court in and for the Southern District of Mississippi Case No. 19-50379-KMS, and Okorie's Complaint in this adversarial case, see United States Bankruptcy Court in and for the Southern District of Mississippi Case No. 23-06017-KMS [1]. Having reviewed these, this Court is satisfied that the Bankruptcy Court did not make [*6]  any mistake with these findings.

intend to do – unless stopped by this Court by entry of this injunction.

**IV.**
**ARGUMENTS AND AUTHORITIES**
**AND SUPPORTING FACTS OF EACH ELEMENT FOR INJUNCTIVE RELIEF**

18.     To be entitled to this temporary restraining order and later a preliminary and permanent injunction, Jones/FSS must show: (1) a substantial likelihood of prevailing on the merits, (2) a substantial threat that irreparable injury will be suffered if the injunction is not granted, (3) the substantial injury to be sustained outweighs the threatened harm, if any, to the Trustee and the Plaintiffs, and (4) granting the preliminary injunction will not disserve the public interest. *City of El Cenizo v. Tex.*, 890 F.3d 164, 176 (5th Cir. 2018).  These are easily done here.

A.     SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERIT

19.     There are several facts that singularly and collective demonstrate the right of Jones/FSS to appeal these inequitable judgments in Connecticut and Texas, but the analytical starting spot is the fact that this Court itself explicitly and repeatedly said that Jones/FSS had the absolute right to appeal both Connecticut and Texas judgments.

20.     The ending spot of this analysis is that the Trustee so thoroughly understood this, that even though the deadline for asking the Connecticut Supreme Court to take the discretionary appeal was January 13, 2025 (unless extended on request which Jones/FSS did), the Trustee took no steps whatsoever to investigate grounds for appeal or preserve right to appeal.  Neither did he seek clarification from this Court that previously entered orders authorizing Jones to pursue appellate rights on behalf of FSS would not interfere with his administration.  Neither did the Trustee ask this Court for leave to not appeal.   Neither did the Trustee instruct Jones – on behalf of FSS – to not pursue any appeals on behalf of FSS even though he had sufficient knowledge that Jones was intending to petition the Connecticut Supreme Court on behalf of FSS.

21.     If the Trustee truly believed he possessed appellate rights he would have surely

either acted to not allow them to lapse or asked this Court for permission to allow them to lapse as a failure to appeal would have been an abandonment of appellate rights which would require this Court's approval.  The Trustee did neither.  And the reason was he knew Jones/FSS held those rights by Court order.  Hence, they were abandoned to Jones/FSS when the Court initially "green lighted" Jones/FSS to pursue any appeals or they were abandoned when the Trustee refused to act. Either way, the Trustee has been abandoned any rights he may have had to control FSS's appellate rights.

22.    But in between these analytic two book ends are a host of interrelated points that further demonstrate Jones/FSS have been given the right to pursue appeals, all of which will be analyzed hereafter, including the fact that

     a.  the Plaintiffs themselves have repeatedly acknowledged that Jones/FSS could appeal;

     b.  the Plaintiffs acknowledged that their rights would be subject to the appellate court decisions;

     c.  Texas, Connecticut and Fifth Circuit case law clearly states that an owner, like Jones, of 100% of a company for whom he is jointly and severally liable, has an absolute right to appeal in that company's name; and

     d.  Appellate rights arose post-petition and thus were not even assets of either bankruptcy estate to begin with.

23.    Each of these will be documented in depth infra.  But singularly or cumulatively, all  of these facts result in the overwhelming and irrefutable conclusion that Jones has, and had, the right to cause appeals to be filed for himself and FSS and any attempts by the Trustee, the Connecticut Plaintiffs or the Texas Plaintiffs to interfere with or undercut these appeals on any basis other than the merits of the respective cases, must be stopped.

**B.     THIS COURT SPECIFICALLY AUTHORIZED JONES/FSS TO APPEAL IN CONNECTICUT AND TEXAS**

24.     As noted, the starting and ending spot for this is that this Court has repeatedly stated that Jones/FSS were permitted to appeal.  This Court has had an active role in the decision to permit not only the trial of the Connecticut Plaintiffs and the Texas Plaintiffs, but the granting of relief on prosecution of the appeals. As a result, at all times in this case the Plaintiffs, Jones and FSS have operated with the express understanding that the judgments awarded in favor of the Connecticut Plaintiffs and Texas Plaintiffs would be fully subject to appellate review.

25.     For example, on December 12, 2022, the Connecticut Plaintiffs and the Texas Plaintiffs filed an Emergency Motion of the Sandy Hook Post-Trial Families for Relief From the Automatic Stay, which sought to lift the automatic stay "to allow the underlying state court verdicts against Jones to proceed to judgment and any subsequent appeal(s) he may pursue to move forward."[4] In response, the Court also entered an agreed order involving Jones, FSS, and the Connecticut Plaintiffs and Texas Plaintiffs on December 19, 2022.[5] The Agreed Order modified the automatic stay to allow the state courts to rule on post-trial motions *and for any appeals by Jones and FSS to proceed*. *Id*.  As a result, FSS proceeded to retain appellate counsel (without objection) who was tasked with handling the FSS appeal. This act was specifically authorized by the Court and has never been revoked, nor was it a power specifically transferred to the Trustee in the Supplemental Dismissal Order.

26.     Even during the hearing on conversion of the case from Chapter 11 to Chapter 7 the Court stated that it would be necessary to wait until the Texas and Connecticut state court

---

[4]     *See,* Emergency Motion of the Sandy Hook Post-Trial Families for Relief From the Automatic Stay, Case No. 22-33553, ECF No. 38.

[5]     *See,* Agreed Order Modifying the Automatic Stay, Case No. 22-33553, ECF No. 58.

appeals play out "because those matters are still being appealed" and that he "can't make a distribution until we actually know what the final number is…"

```
24                THE COURT:  We go there.  And then we then wait
25    until I guess the Texas and the Connecticut state court

1     appeals play out, right?  Because those matters are still
2     being appealed.
3                MR. KIMPLER:  Those matters are --
4                THE COURT:  With respect to --
5                MR. KIMPLER:  -- being appealed.  I think there's
6     --
7                THE COURT:  That's why I'm saying we have to wait.
8     I can't make a distribution until we actually know what the
9     final number is, right?  I don't --
10               MR. KIMPLER:  I think the part --
11               THE COURT:  I don't think you have an allowed
12    claim that's being subject to anything else.
```

[See, Hearing Tr. 69:24-70:12, September 24, 2024, Dkt #721].

27.     This Court's Memorandum opinion partially granting the Texas Plaintiffs'

summary judgment states that

> This Court cleared the runway for Jones to appeal the Connecticut judgment, including the amount of punitive damages, and nothing in this bankruptcy case affects that appellate right.

[*See*, Case 23-03035, Dkt #46] (emphasis added). And in granting partial and interlocutory summary judgment on the nondischargeability of the jury awards based on the Heslin/Lewis defamation claims the Court also expressly stated that "[t]he ultimate amount of this nondischargeable debt could change if Jones succeeds on his state court appeal." [*Id.*, footnote

40].[6]

28.    Recognizing the overwhelming number of these judicial orders, the Plaintiffs will surely attempt an argument that these right to appeal orders applied to Alex Jones individually and not to his wholly owned company, FSS, with whom he was and is jointly and severally liable.  Such a threadbare argument is untenable.  First, neither the Trustee nor anyone else ever even suggested that there is a distinction between Jones and FSS when the Court was making its rulings with references to the appeals process underway.  Second, the Court itself knows what it intended when it made those rulings. Third, this Court dismissed FSS from bankruptcy on June 21, 2024 [Dkt. 956 (Case 22-60043)] but retained jurisdiction to "interpret and enforce" its order.  As such there was no more "bankruptcy estate" of FSS.    Then 90 days later issued a supplemental order [Dkt. 1021] vesting the property of FSS in the Jones Bankruptcy estate, essentially created an enlarged estate with the assets of FSS.[7]  Hence, when one spoke of Jones's appellate rights, there was no separation between Jones's personal rights and duties and FSS's personal rights and duties. In essence, the two became one (which will be discussed in more detail below).[8]

29.    Finally, as referenced, this Court has the absolute right to interpret its own orders.  While Jones/FSS believe this Court's orders are crystal clear, to the extent this Court believes clarification would be helpful it is free to so clarify and should do so (although Jones/FSS adamantly state no such clarification is necessary).

C.    **THE TRUSTEE AND THE PLAINTIFFS THEMSELVES HAVE REPEATEDLY ACKNOWLEDGED JONES AND FSS HAD APPELLATE RIGHTS AND THAT THE**

---

[6]       This Court makes the same acknowledgements in its Memorandum Opinion granting partial and interlocutory summary judgment in favor of the Connecticut Plaintiffs. [*See*, Case No. 23-03037, Dkt #76, footnote 43].

[7]       Hearing Tr. 26:17-24, September 24, 2024 Dkt #721 (The Court: "Mr. Wolfshohl, what about that? And I think you can work with Ms. Driver just to make sure that I don't -- anything that we were to write to amend the order just doesn't run afoul the deal that you all agreed to today, or reserves rights, or does something. I just don't want -- I'm going to give you all the assets of FSS. I'm going to clarify that that's what you always had, the assets of FSS.").

[8] The case of *Croft v. Lowry (In re Croft),* 737 F.3d 372, 374 (5th Cir. 2013) will be discussed infra.

CONNECTICUT AND TEXAS JUDGMENTS WERE SUBJECT TO THOSE APPEALS

30.     Well prior to the Trustee's 9019 Settlement Motion, Jones, as the DIP, objected to all of the Plaintiffs' claim filed in the Jones Chapter 11 case and sought a hearing made mandatory under bankruptcy Code 502(a) and (b).   However, a hearing on the claims objections has been opposed by the written response of the Connecticut Plaintiffs, urging this Court to "not, in any event, adjudicate the Connecticut Plaintiffs' underlying claims" arguing that "adjudication is unnecessary because the amount has already been determined by the Connecticut Judgment … [and] this Court specifically lifted the stay at the outset of Jones's case for the specific purpose of allowing the claims to proceed to final judgment, and allowing Jones to take an appeal of that judgment." [See, Connecticut Plaintiffs' Opposition to Jones's Claim Objection, Dkt #812, ¶13]. The Connecticut Plaintiffs further argue that the Court "lacks jurisdiction to adjudicate the amount of the Connecticut Plaintiffs' claims" and that the Jones's Claim Objection "requests that the Court eschew the determinations of the Connecticut Court and *circumvent the appeals process* – *ignore this Court's own decision recognizing and giving effect to those determinations*– and instead, determine a different amount of the Connecticut Families' claims." *Id.*, ¶15 (emphasis added). The Connecticut Plaintiffs also acknowledge that the decision by the appellate courts "would end the inquiry" and urges that "in the interest of judicial efficiency … the appeals process should be permitted to run its course." [See, Connecticut Plaintiffs' Opposition to Jones's Claim Objection, Dkt #812, ¶17]. Now, in pure hypocritic fashion, the Connecticut Plaintiffs seek to do exactly what they criticize Jones of – they seek to circumvent the appeals process without giving any effect to the determinations that would be made by the appellate courts.

31.     The Connecticut Plaintiffs and the Texas Plaintiffs have been afforded substantial relief in this case based on them taking the position that the appeals by Jones and FSS should be

allowed to go forward. The equitable doctrine of judicial estoppel should apply to prevent them from now demanding the appeals be dismissed by the Trustee.

32.     It is clear that what is now going on behind the scenes is an agreement amongst the Trustee, the Connecticut Plaintiffs, and the Texas Plaintiffs, for the Trustee to dismiss the FSS appeal and allow, with respect to the Texas Plaintiffs, for them to avoid the appellate process altogether by this Court's proposed Order allowing them to assert a liquidated, ***non-contingent*** claim, and receive an almost immediate payment of $4 million entirely inconsistent with the previous positions taken in this case.  In fact, what is most troubling is the effort to circumvent the application of the doctrine of judicial estoppel that applies here, by seeking an Order of this Court that "clears the runway" for the Trustee stop the Jones and FSS appeals.

### D.     THE INTERESTS OF JONES AND FSS ARE SO INTERWOVEN THAT JONES IS LEGALLY ALLOWED TO APPEAL A JUDGMENT AGAINST FSS EVEN WITHOUT A COURT ORDER

33.     Even before the union of assets and rights achieved by the Order entered September 25, 2024 [Dkt. 1021], in Texas and Connecticut, judgments had been entered against Jones and FSS finding joint and several liability.  This alone, apart from consent or leave of this Court, created jointly held rights of appeal, which could be exercised by Jones for FSS.

34.     In each of Texas, Connecticut and the Fifth Circuit, if a trial judgment involves related parties (such as an owner and his wholly owned entity), if their interests are "interwoven" such that a judgment against one affects or prejudices the other – clearly the case here -- one can appeal for the other.

35.     In Texas, this was explained in *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 844 (Tex. 2000) (emphasis added; citations omitted)

> Torrington argues that, whether or not the judgment against it is reversed, **it has standing to appeal the judgment against Textron** because it must pay that judgment…. We faced a situation similar to Torrington's in *Bi-Ed, Ltd. v. Ramsey*.  Bi-Ed's predecessor-in-

interest sued for access to land, arguing that the disputed property belonged to the city and not Ramsey. The city was joined as a party. The trial court found that the land belonged to Ramsey and rendered judgment accordingly. **The city did not appeal**. We held that Bi-Ed could appeal despite the fact that it asserted no ownership interest in the property, reasoning that it had a "justiciable interest" in pursuing the case. **Similarly, Torrington has a clear justiciable interest in appealing the judgment against Textron,** which it would have to pay. This is in accord with our well-established rule that, to appeal an alleged error, a party must show that the error injuriously affects it. Because we uphold the trial court's judgment requiring Torrington to indemnify Textron, Torrington would be injured by any error in the judgment against Textron. Accordingly, we hold that Torrington may challenge that judgment.

Connecticut law is identical. In *Gino's Pizza of E. Hartford, Inc. v. Kaplan*, 193 Conn. 135, 136, 475 A.2d 305, 306 (1984) the Connecticut Supreme Court stated Connecticut law to be the same as quoted above in Texas. Furthermore, the Connecticut Supreme Court used as its authority, the Fifth Circuit case of *Kicklighter v. Nails By Jannee, Inc.,* 616 F.2d 734 (5th Cir. 1980), the Connecticut Supreme Court stating:

At issue is whether the judgment against Kaplan, who did not appeal, should also be reversed. Once again, we are guided by *Kicklighter v. Nails By Jannee, Inc*., [ 616 F.2d 734 (5th Cir. 1980)]. Faced with this exact question, the Fifth Circuit held:

"… we hold that third-party defendant has appealed and asserted this error not only on its own behalf but also on behalf of defendant. Thus, the third-party defendant's appeal operates …as an appeal of the judgment of defendant as well as the judgment of third-party defendant."

*Gino's Pizza*, 475 A.2d at 309 (citing and quoting *Kicklighter v. Nails By Jannee, Inc.,* 616 F.2d 734 (5th Cir. 1980)). Thus, Connecticut, Texas and the Fifth Circuit share the same law. Hence, apart from all else, Alex Jones was and is perfectly within his rights to file and maintain an appeal for his wholly owned subsidiary, FSS on judgments for which he is jointly and severally liable with FSS.

E.   **THE INTERWOVEN NATURE OF THE RELATIONSHIP OF JONES AND FSS IS WHAT CAUSED THIS COURT TO TRANSFER FSS ASSETS TO JONES ESTATE – BECAUSE OF WHICH A CONSENT FOR "JONES" TO APPEAL ENCOMPASSES FSS AS THEY ARE SAME**

36.   The logic of allowing one party whose interests are interwoven with another to act

for that person is a concept that flows throughout Fifth Circuit jurisprudence.  For example, in

*Nesloney v. Midway Oilfield Constructors, Inc.,* 2018 U.S. Dist. LEXIS 180915, at *1 (S.D. Tex.

2018) Judge Rosenthal held the automatic stay provisions of § 362 applied to a creditor pursuing

the owner of a bankrupt business, stating, "Courts must stay proceedings against a nondebtor

defendant when 'there is such an identity between the debtor and the third-party defendant that

the debtor may be said to be the real party defendant and that a judgment against the third-party

defendant will in effect be a judgment or finding against the debtor.'" *Id*. at *1-2.

37.     The interwoven nature of the two parties was made abundantly clear by the Court

during September 24, 2024 hearing on the Trustee's Motion to Winddown FSS when the Court,

in response to Trustee's counsel Joshua Wolfshohl requesting permission to pay fees and

commission for the sale of FSS assets out of FSS cash "because this process obviously is being

done for the benefit of FSS and its creditors that the costs of that be allocated to FSS", stated

> The creditors of FSS are one and the same of the creditors of Mr. Jones. They are
> the same. So this is not being done for the benefit of FSS creditors. This is being
> done for the benefit of the Jones creditors who sued FSS and Jones. And now the
> Trustee holds the equity for them. Everything is going to them through this estate.
> But there's cash there, and you're just using a particular portion of the cash that's
> available through FSS to then liquidate the FSS stuff. But ultimately it will be
> distributed through the Jones Chapter 7 case for the benefit of the same creditors
> who have been appearing. They're in one and the same.

[See, Hearing Tr. 12:23-13:9, September 24, 2024, Dkt #861]. The Court also noted the impact

the judgment against FSS could have on Jones during the December 9, 2024 Sale Hearing when

explaining Jones's economic interest in the outcome of the sale of FSS assets:

> I think Jones had an had an economic interest in the outcome of this case and had
> the right to argue that the sale process wasn't fair and shouldn't maximize value
> because he's got an economic interest in "Free Speech". He's got personal economic
> interest because some of the judgments against "Free Speech" that the Connecticut
> families and the Texas families hold could ultimately impact the amount of liability
> that he may be ultimately liable for.

[See, Hearing Tr. 360:19-361:2, December 10, 2024].

38.     This is no doubt the reason this Court ordered the property of wholly owned FSS, to be deemed vested in the Jones bankruptcy estate, even while dismissing FSS's bankruptcy case.  Dkt. No. 1021, Case 22-60043.  This "deemed vesting" was a defacto consolidation of the Estate of Jones and the Estate of FSS, which the Fifth Circuit has explicitly blessed: "The bankruptcy court has authority to order de facto disregard of the corporate form through consolidation proceedings." *In re S.I. Acquisition, Inc.,* 817 F.2d 1142, 1144 n.2 (5th Cir. 1987).  Because the properties and liabilities of FSS and Jones are deemed one, the grant to Jones to appeal encompasses rights associated with FSS.

39.     In fact, understanding that properties and liabilities of Jones and FSS have effectively been judicially comingled, it would be virtually impossible at this point to segregate FSS from Jones to accurately differentiate the two debtors to say what an FSS appeal covered that a Jones appeal didn't or vice versa or to even explain the logic of trying to do so.   Hence it is the height of sophistry to argue that in joining the two, somehow this Court intended to maintain a separation such that a purely defensive right untethered to any affirmative claims, somehow became "separate property."

**F.    THE DEFENSIVE RIGHT TO APPEAL AROSE POST-PETITION AND IS THUS NOT AN ASSET OF THE ESTATE AND IN ALL EVENTS IS SUBJECT TO THIS COURT'S ORDER**

40.     Ignoring all of the above, the Trustee seems to argue that he and he alone possesses the rights to control the appeal of defensive issues for FSS, sometimes referred to as Defensive Appeal Rights, which are identical to those of Jones.  The Trustee appears to claim as the basis of his "authority," *Croft v. Lowry (In re Croft)*, 737 F.3d 372, 374 (5th Cir. 2013).   But *Croft* is irrelevant for several important reasons.

41.     First, *Croft* deals with pre-petition rights, "It is well established that any causes of action belonging to the debtor are property that becomes part of the estate **once the bankruptcy**

**petition is filed.**   *Id.* at 375.   This is consistent with the Code itself that provides: "The commencement of a case … creates an estate…. comprised of …all legal or equitable interests of the debtor in property **as of the commencement of the case**."   11 U.S.C.S. § 541.

42.     Consistent with this, in *Croft*, Bradley Croft was involved in two suits which he lost and subsequently appealed to the San Antonio court of appeals.   The Fifth Circuit explicitly states that "After filing both appeals, Croft filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code."   *Id.* at 374.   While the notion that purely defensive claims (sometimes called "Defensive Appellate Rights") are an asset under Texas law simply because the Texas Supreme Court in 1943 in a divorce case (*Womack v. Womack*, 141 Tex. 299, 301, 172 S.W.2d 307 (1943)) gave the term "property" a broad definition, is not rational. Separate and apart from the fact that *Croft* did not apply where there was joint and several liability between a party and his solely owned entity, and assuming it to be the law, the appellate rights of FSS here did not arise before the bankruptcy but well after. [9]

43.     Second, and related, the matters being appealed do not even relate to pre-petition claims; rather they primarily relate to Death Penalty Sanctions that have nothing to do with the merits of any claims.   Hence, even if one groped for a "relation back" analog, none exists here.

44.     Third, whether the Defensive Appellate Rights are assets of the Estate of Jones (or of the Estate of the dismissed FSS), this Court maintains supervisory powers and can issue its

---

[9] Jones/FSS maintain that under ample Texas statutes and cases, the term "property" means real, personal and/or intangible property, that is capable of being owned.  See, e.g., Tex. Tax Code § 1.04 defining Property as "any matter or thing capable of private ownership," and then differentiating among real property, personal property and intangible property.  One is not capable of "owning" a negative restriction and certainly not a "right" to appeal a defensive issue. An employee's covenant not to compete cannot be deemed an "asset" and neither can any penalty or fine assessed be deemed an asset.  If Jones had been ticketed for speeding, one could hardly call defending that an "asset" of the bankruptcy estate, particularly one assessed after the bankruptcy was well under way.

orders allowing FSS's appeal – which it has done. [10]

45.     Fourth, *Croft* sets out the general rule, and references the exception to that general rule:

> Specifically, a debtor's property rights are determined by state law, while federal bankruptcy law applies to establish <u>*the extent to which*</u> *those rights are property of the estate.*  *Mitchell v. BankIllinois*, 316 B.R. 891, 896 (S.D. Tex. 2004); *see also Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979) (holding that "[p]roperty interests are created  and defined by state law"); *Stanley v. Trinchard*, 500 F.3d 411, 418 (5th Cir. 2007).
> …
> <u>***Croft***</u>'s objection can also be understood as objecting to the simple fact that he can no longer appeal the merits <u>***of***</u> the judgment. This argument fails because it is well established that the right to appeal is property <u>***of***</u> the estate. Because <u>***Croft***</u> has presented no arguments demonstrating *why losing defensive appellate rights would create a greater injustice than losing cause-**of**-action appellate rights*, there is no reason to treat them differently.

*Id.* 374-75 & 377-78. [Emphasis Added.]

46.     Here, the "greater injustice" exception has a clear dichotomy that must be considered by this Court in determining the Trustee's decision to allow an appeal to be dismissed or lost by the Trustee's deliberate inaction.   Here, "… losing (a) cause-of-action appellate rights" generally involves the time and cost to potentially enhance the estate with an affirmative recovery. Its corollary – "losing defensive appellate rights" potentially means that a false or legally reversable judgment is allowed to stand, *diminishing legitimate creditors' claims* and potentially, as in this case, *leading to an inequitable result* in, for instance, allowing to continue an objection to dischargeability when the underlying basis has deliberately gone untested by the actions of the Trustee, or as here, potentially the Plaintiffs themselves.   If that evidence is present, the Trustee cannot dismiss or allow a defensive appellate right to be lost, particularly because the Trustee is not paying any of the costs and fees associated with the appeal.   But more to the point of the

---

[10]     This is particularly the case when the Order Dismissing Case explicitly provides that "the Court retains jurisdiction to interpret and enforce this Order." [Case 22-60043, Dkt #956].

inequitable impact, the loss of the appeal rights is the loss of "fundamental constitutional rights" abhorred by our federal justice system. *See, Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 22, 107 S. Ct. 1519, 1532 (1987); *Henry v. First National Bank,* 595 F.2d 291, 299-300 (5th Cir. 1979). Thus, there is clear law binding this Court to consider the "greater injustice" of deprivation of fundamental constitutional rights of the debtor Jones and FSS. Thus, issue before this Court is not whether the Trustee has the general right (with Court permission) to dismiss the FSS's or Jones' appeals (pursuant to the general rule espoused in *Croft*), but whether Jones and FSS can show a "greater injustice." And this clear impediment to the Settling Parties goal of dismissing appeals, is in addition to the above reasons of both judicial estoppel and this Courts prior un-appealed rulings, as well as the trustee's abandonment of the appellate rights discussed below.

### G.    IF THE TRUSTEE EVER POSSESSED DEFENSIVE APPELLATE RIGHTS IN CONNECTICUT AND TEXAS THE TRUSTEE ABANDONED THOSE DEFENSIVE APPELLATE RIGHTS

47.    As referenced above, this Court and the Trustee have repeatedly stated that Jones's appeal rights are intact and the Trustee in particular has done nothing to assist or interfere with those appellate rights. And the reason is very clear: with this Court's permission, the Trustee has abandoned any interest or involvement in the appellate process in either Connecticut or Texas.

48.    Starting most recently and working backwards, the Trustee knows the important and relevant U.S. Constitutional issues that were not raised, particularly in Connecticut, both because the Court of Appeals said so [11], and also because of outbursts of the Connecticut

---

[11] The Connecticut Court of Appeals noted specifically that in the appellate briefing, former counsel for Jones/FSS raised no US Constitutional arguments and only referenced one Connecticut Constitutional point, which the Court of Appeals rejected as (a) it was a referenced to a criminal proceeding and (b) it was inadequately briefed and thus waived, the Court of Appeals writing:

"In their principal appellate brief, the defendants claim that '[a] liability default is never appropriate in a case involving speech, given the importance the Connecticut constitution places on speech.' The defendants cite

Plaintiffs at the December 10, 2024 trial:

```
 8   Q     Sounds about right.  Now, you also know that the New
 9   York Times v. Sullivan case says that where a public media
10   defendant like Mr. Jones is concerned, he can't be held
11   liable for anything, any damages at all, except with the
12   plaintiffs proving by clear and convincing evidence that he
13   knew it was false or was reckless and disregarded.  You know
14   that's the law of the United States Supreme Court
15   interpreting the Constitution, don't you?
```

***

```
 1        MR. PATERSON:  Your Honor, I'd also object based
 2   on relevance.  There's no indication any of those arguments
 3   have actually been raised on appeal in that Connecticut
 4   case.
```

[See, Hearing Tr. 172:8-173:4, December 10, 2024].

49.    The Trustee knew that the Connecticut rules for petitioning the Connecticut Supreme Court to review in Connecticut was 14 days from the date the Court of Appeals issued its December 10, 2024 opinion, as the appellate rules are published and clear.   With knowledge of these deadlines, the Trustee, who one must assume was deliberately acting, took no steps -- even in the face of knowledge of the massive Constitutional errors that the trial court and Court of Appeals had committed -- to attempt to appeal or to even preserve the right to appeal in Connecticut, knowing that if action was not taken by January 13, 2025, any hope of reversal in

---

article first, § 6, of the Connecticut constitution, which, as they concede, applies only to criminal prosecutions; see Gray v. Mossman, 91 Conn. 430, 442-43, 99 A. 1062 (1917); and which provides: 'In all prosecutions or indictments for libels, the truth may be given in evidence, and the jury shall have the right to determine the law and the facts, under the direction of the court.' Conn. Const., art. I, § 6. The defendants' principal appellate brief is bereft of any substantive legal analysis to support this claim, and, therefore, we deem it to be abandoned.

Connecticut would be gone forever.  Fortunately, appellate rights were preserved by Jones/FSS

getting an extension and then on January 21, 2025 filing a Petition for Certification.  Exhibit 1.

The Trustee's failure to act, however, is of massive and multifaceted significance.

50.     First, even if the Trustee maintained control of those Defensive Appellate Rights,

in failing to act he abandoned any appellate rights he may have ever had.  Had the trustee come

to this Court and claimed to possess appellate rights but advised the Court he did not want to

appeal, everyone would have received notice and this Court could have made a decision.  But

the Trustee did not and the reason he did not was because he knew he had no appellate rights.

If, on the other hand, the Trustee actually thought he had appellate rights, his neglect in not

investigating, acting or bringing them to this Court's attention, would be evidence of severe

malfeasance, and grounds for his removal at the very least.  An additional factor to consider is

that the Trustee has provided no explanation for why not pursuing appellate rights on behalf of

FSS would be in the best interest of the Estate.  No explanation has been provided because none

exists.  Finally, if the Trustee "made a deal" with the Plaintiffs that he would simply let the

appeal period lapse (even though the Trustee's estate was not paying attorneys fees or costs for

the prosecution of these appeals) that conduct could have been far worse then improper.

51.     Second, the reason he did not ask this Court for approval to abandon the appeal in

December 2024, is because he knew that approval had previously been given to Jones/FSS to

appeal all Connecticut judgments at that time, amounting to an abandonment of appellate rights

if the Trustee ever had any, at that time.  Thus, in December 2024, the Trustee had neither the

interest nor reason to do anything having already abandoned involvement in any defensive

appeal rights.  And an abandonment is irrevocable.  See *Tschirn v. Secor Bank,* 123 B.R 215,

218 (E.D. La 1991).

52.     Third, and even more fundamentally, the Trustee's failure to take any action to

preserve appeal rights – which the Trustee and Connecticut Plaintiffs now take a keen interest in -- further shows that this Trustee is not pursuing his duties in a fair and even handed manner, but is in collusion with the Connecticut plaintiffs to do everything he can to assist them and keeping their judgments.  This is easily demonstrated and reference is made to the Trustee's inexplicable conduct in proposing a "settlement" [Dkt. 1011] which is no "settlement" at all but a surrender of his independence to the Plaintiffs in that he has accepted their over $1,400,000,000 Claim in full, when he knows (a) the Connecticut Court of Appeals has reduced that amount by $150 million; (b) the common law punitive damages (which this Court has said are dischargeable) were awarded via default without compliance with the Supreme Court requirements of clear and convincing evidence of subjective malice, thus knocking out another $350,000,000; (c) the emotional distress damages were awarded based on a "knew or should've known" standard which the US Supreme Court has explicitly condemned thus knocking out a further $561,000,000; and (d) the so-called "defamation damages" of $400 million were awarded without a determination of fault or falsity proved by the plaintiffs with  clear and  convincing evidence.  Yet the Trustee has accepted the entire claim at its face amount!   And critically, a reversal of that by the Supreme Court at the very best, leaves the Trustee with egg on his face – or worse.

## V.
## ARGUMENTS AND AUTHORITIES
## ON REMAINING INJUNCTIVE ISSUES AND TEMPORARY RELIEF

53.    Bankruptcy Rule 7065 has certain limitations not applicable to Section 105 injunctions, but both confer on the bankruptcy courts all of the traditional injunctive powers of a court of equity,[12] and authorize and empower this Court to issue any orders that will further

---

[12]  *See* S. Rep. 95-989, at 12 (1978); H.R. Rep. No. 95-595, at 11, 342 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 5973, 6298.

the purposes and goals of the Bankruptcy Code, assist in the orderly and effective administration of the pending and ongoing bankruptcy cases, aid in the preservation of the assets of the Debtor estates, and aid in the promulgation and confirmation of a chapter 11 plan that will maximize recovery to all of the Debtors' creditors and prevent abuses and violation of Court Orders or the rights of a Chapter 7 debtor or third parties.[13]   Here defendants have trampled on the rights of Alex Jones as the owner of his Persona and the owner or co-owner of Jones IP Rights as well as third parties relying on the faithful and honest performance of their fiduciary duties to the Court and the bankruptcy estate of Jones.  As explained by a leading bankruptcy treatise:

> Section 105 is an omnibus provision phrased in such general terms as to be the basis for a broad exercise of power in the administration of a bankruptcy case.  The basic purpose of section 105 is to assure the bankruptcy court's power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction.  *See*, Collier on Bankruptcy ¶ 105.01 (2001).

54.     The Bankruptcy Court has exclusive jurisdiction over property of the Debtors' estate pursuant to 28 U.S.C. § 1334, in whatever form and wherever located.  This includes a Chapter 7 debtor's exempt property and his personal rights including the Jones Persona and the Jones IP Rights.  Thus, the powers conferred on this Court by section 105(a) are accordingly broader than the automatic stay provisions and permit this Court to enter an injunction even in a situation that is not included within the automatic stay.  *See In re AP Indus., Inc.*, 117 B.R. 789, 801 (Bankr. S.D.N.Y. 1990); *In re Stadium Mgmt. Corp.*, 95 B.R. 264, 266-78 (D. Mass. 1988).[14]

---

[13]      *In re A.H. Robins*, 788 F.2d at 1002 ("The statutory power of the bankruptcy court to enjoin actions involving the debtor or its property is not, however, limited to section 362. . . .  It has been repeatedly held that 11 U.S.C. § 105 . . . 'empowers the bankruptcy court to enjoin parties other than the bankrupt' from commencing or continuing litigation.") (citing *Otera Mills, Inc. v. Sec. Bank & Trust*, 25 B.R. 1018, 1020 (D.N.M. 1982)); *In re Johns-Manville Corp)*, 40 B.R. at 226 ( "In the exercise of its authority under § 105, the Bankruptcy Court may use its injunctive authority to `protect the integrity of a bankrupt's estate and the Bankruptcy Court's custody thereof and to preserve to that Court the ability to exercise the authority delegated to it by Congress.' Pursuant to the exercise of that authority the Court may issue or extend stays to enjoin a variety of proceedings which will have an adverse impact on the Debtors' ability to formulate a Chapter 11 plan.") (citations omitted).

[14]      *See also* S. Rep. No. 95-989, at 12 (1978); H.R. Rep. No. 95-595, at 342-43 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 5973, 6298 ("The court has ample other powers to stay actions not covered by the automatic stay.

In this case the automatic stay should be found to be applicable at the time of the entry of the § 105 injunctive relief as to certain relief and "automatically" applicable to the exempt or protected rights of Alex Jones and FSS and their respective and combined appellate rights to protect their fundamental constitutional rights.

55.    In considering the propriety of an injunction pursuant to section 105(a) of the Bankruptcy Code, a bankruptcy court is generally required to consider a modified version of the typical elements for injunctive relief set out below, with a particular emphasis on the element of "the public interest."[15]   However, in a less stringent application of Rule 65 injunctions, these injunction elements are:

> factors to be balanced and not prerequisites that must be satisfied.  These factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements.  'A fixed legal standard is not the essence of equity jurisprudence.'"  *In re Eagle-Picher*, 963 F.2d at 858 (citations omitted).

Section 105 is of critical import in this case.   Section 363(n) is the mechanism by which a Trustee may set aside a collusive bid scheme.  However, court generally hold that *only the trustee* has standing to avoid a sale under § 363. *See In re Butan Valley, N.V.*, 2009 U.S. Dist. LEXIS 119542, 2009 WL 5205343 at *2 (S.D. Tex. Dec. 23, 2009).   However, who avoids a sale if the Trustee is a participant in the secret agreements, as alleged here?   Case law has now developed such that *In re Butan Valley* is no longer good authority.   Courts now look at whether the claimant is within the "zone of interest that Congress intended to protect in § 363(n).[16]  "U.S. Bankruptcy law has a

---

Section 105[] of proposed title 11 . . . grants the power to issue orders necessary or appropriate to carry out the provisions of title 11.").

[15]    *Am. Film Techs*., 175 B.R. at 849.  *See also Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994) (citing four similar considerations: (a) the movant's reasonable probability of success on the merits; (b) irreparable harm to the movant if relief is not granted; (c) the possibility of harm to other interested parties; and (d) the public interest); *In re Eagle-Picher Indus., Inc. ,* 963 F.2d at 858 (same).

[16]    The statute itself plainly states: "The trustee may avoid a sale under this section if the sale price was controlled by an agreement among potential bidders at such sale . . . ." I, 363(n).  *In re New Energy Corp*., No. 12-33866 HCD, 2013 Bankr. LEXIS 3665, at *7-8 (Bankr. N.D. Ind. Feb. 26, 2013). However, *Rumsey Land Co. v. Res. Land*

strong public policy against enforcing collusive or price-fixed bids in … contracts." *In re SageCrest II, LLC,* No. 3:16-cv-00021 (VAB), 2018 U.S. Dist. LEXIS 54245, at *13 (D. Conn. Mar. 30, 2018). Importantly, it has also been noted that "Section 363(n) *complements the court's overall authority to withhold approval of sales lacking in good faith by reason of finding collusion (for instance) between the purchaser and other bidders….*" *In re Edwards*, 228 B.R. 552, 563 n.23 (Bankr. E.D. Pa. 1998). Thus, where the participants involved lack good faith and/or engage in a collusive settlement scheme, and the Trustee joins in that lack of good faith, it is the Court that controls the decision of voiding the bid of a participant with its power to enjoin pursuant to §105.

56. As to Plaintiff-movant Alex Jones, to be entitled to this temporary restraining order, the Jones Plaintiffs must show the following:

    a. a substantial likelihood of success on the merits (that is, Jones and FSS's appellate rights will be lost) which should not be allowed for multiple reasons set out above;

    b. a substantial threat that the Jones Plaintiffs will suffer irreparable injury if the injunction is denied;

---

*Holdings, LLC,* Civil Action No. 16-cv-2117-CMA-MLC, 2018 U.S. Dist. LEXIS 54482, at *20 (D. Colo. Mar. 5, 2018) recognizes that § 363(n) "statutory standing" is no longer jurisdictional:

> Thus "questions of so-called 'statutory standing' like the one presented in this case, despite no longer falling under the technical label of prudential standing, are not jurisdictional." *Niemi*, 770 F.3d at 1345. Recently, the Bankruptcy Appellate Panel of the Tenth Circuit recognized the question of a non-debtor, non-trustee's "statutory standing" "isn't actually a matter of standing at all; instead, it *merely asks whether a particular federal cause of action 'encompasses a particular plaintiff's claim.'*" *In re Peeples*, 880 F.3d 1207, 1213 (B.A.P. 10th Cir. 2018) (internal quotation marks omitted, quoting *Lexmark*, 134 S. Ct. at 1387, 1388).
>
> …. Thus the issue Defendants attempt to treat as jurisdictional is instead *whether Romanowski fails to state a claim because his alleged interest or injury is not within the "zone of interests" that Congress intended to protect in § 363(n). In re Peeples,* 880 F.3d at 1213 Defendants' Rule 12(b)(1) motion fails with respect to Romanowski's Section 363(n) claim because it does not raise a jurisdictional issue. Nor can the court construe the motion as one brought under Rule 12(b)(6) (through Rule 12(c), since Defendants have answered) because none of the parties brief the applicable "zone of interests" doctrine. *Id. Rumsey* at *2

c.   the threatened injury outweighs any damage that the injunction might cause the Defendants; and

d.   granting the injunction will not disserve the public interest.

*See, Sugar Busters LLC v. Brennan*, 177 F.3d 258, 265 (5th Cir. 1999); *Morales v. City of S. Padre Island*, 2010 U.S. Dist. LEXIS 55362 *7-8 (S.D. Tex. June 4, 2010).   The decision to grant or deny injunctive relief is left to the sound discretion of the district court. *Mississippi Power & Light Company v. United Gas Pipe Line Company*, 760 F.2d 618, 621 (5th Cir. 1985).

**A.   JONES AND FSS WILL SUSTAIN IRREPARABLE INJURY IF THIS INJUNCTION IS NOT GRANTED**

57.   As this Court knows, Jones and FSS are jointly and severally liable on the Connecticut and Texas judgments. Should the appeal of  FSS be thwarted or worse dropped because of interference with FSS's appeal, then a gross miscarriage of justice will occur where Jones will have been released from the crushing weight of these unconstitutional judgments, but his wholly owned company FSS will have not, creating at best confusion given the joint and several, alter ego bases.

58.   But even worse, if FSS does not appeal, then FSS's assets can and will be sold, and it that occurs, they are lost forever, with the cash proceeds being distributed on judgments that should have never been entered.  This means Jones's estate and rights will have been lost because of a judgment that should have never been entered.  And this forfeiture will have been accomplished because the Trustee has been derelict in its duties and joined in league with the Plaintiffs.

**B.   THE SUBSTANTIAL INJURY TO BE SUSTAINED BY JONES/FSS OUTWEIGHS THE THREATENED HARM, IF ANY, TO THE TRUSTEE AND THE PLAINTIFFS, WHO WILL EXPERIENCE NO HARM**

59.   As to the Trustee, he will suffer no prejudice.  First, the Trustee is not paying for

any appellate work and thus there is not cost savings.  Moreover, the Trustee would have already allowed Connecticut appeal to have lapsed by his conscious failures to act. Thus, the issue is not what prejudice the Trustee will sustain if FSS appeals, but what prejudice will the Trustee and the Estates he represents suffer if the appeal is halted.  Stated this way, it is clear the Trustee and his Estates will suffer no harm – unless he has reached a deal with the Plaintiffs that he did not disclose to this Court that there would be no appeals.  If that is the case, then the Trustee should be immediately removed for malfeasance.

### C. GRANTING THE PRELIMINARY INJUNCTION WILL NOT DISSERVE THE PUBLIC INTEREST BUT DENYING IT WILL

60.    This Court needs no reminder of the significant Constitutional issues that are at stake here.  Moreover, the Constitutional issues at stake are critical not only to the public interests but to the soundness of our Republic itself.   Every media outlet world-wide has their eyes on this case because of the importance of these issues.

### CONCLUSION

Jones/FSS request that this Court grant relief in the form of a Temporary Restraining Order. Further, the Jones/FSS pray that this Court (a) after hearing, enter a preliminary injunction; and (b) after trial issue permanent injunctive and declaratory relief for the matters herein addressed, and for damages, attorney's fees, costs, pre and post judgment interest, and for such other relief, legal or equitable, to which Jones/FSS shall show themselves justly entitled.

Dated: February 3, 2025

/s/ Shelby A. Jordan
SHELBY A. JORDAN
State Bar No. 11016700
S.D. No. 2195
ANTONIO ORTIZ
State Bar No. 24074839
S.D. No. 1127322
Jordan & Ortiz, P.C.
500 North Shoreline Blvd., Suite 804
Corpus Christi, TX  78401
Telephone: (361) 884-5678
Facsimile:  (361) 888-5555
Email:  sjordan@jhwclaw.com
          aortiz@jhwclaw.com
Copy to: cmadden@jhwclaw.com
**CO-COUNSEL FOR ALEX JONES And FSS**

BEN C. BROOCKS
State Bar No. 03058800
Federal Bar No. 94507
WILLIAM A. BROOCKS
St. Bar No. 24107577
Federal Bar No. 3759653
BROOCKS LAW FIRM PLLC
248 Addie Roy Road, Suite B301
Austin, Texas 78746
Phone: (512) 201-2000
Fax: (512) 201-2032
Email: bbroocks@broockslawfirm.com
**CO-COUNSEL FOR ALEX JONES And FSS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was served upon all parties registered to receive notices via the Court's ECF noticing system on February 3, 2025 as well as the following parties.

/s/ Shelby A. Jordan
Shelby A. Jordan